IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RICHARD DIAZ RODRIGUEZ,

Plaintiff,

v.

HONEYWELL AEROSPACE DE
PUERTO RICO, INC.,

Defendant.

CIVIL NO. 13-1481 (CVR)

## OPINION AND ORDER

### INTRODUCTION

Plaintiff Richard Díaz Rodríguez  ("Plaintiff" or "Díaz") brings this suit alleging discrimination on the basis of age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 601 et seq. and Puerto Rico's Law No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29 § 146, *et seq*., seeking compensatory, double and liquidated damages, back pay, and equitable and injunctive relief to seek redress for defendant Honeywell Aerospace de Puerto Rico, Inc.'s ( "Defendant" or "Honeywell") alleged discriminatory acts. In the alternative, Díaz seeks relief for his unjust dismissal under state Law No. 80 of May 30, 1976 ("Law No. 80").

Before the Court now is Defendant's Motion for Summary Judgment (Docket No. 42); Plaintiff's opposition thereto (Docket No. 53); Defendant's reply to Plaintiff's opposition (Docket No. 70); and Plaintiff's sur-reply (Docket No. 78).

Defendant's motion petitions the Court to grant summary disposition of all of Plaintiff's claims.  Regarding the ADEA claims, Defendant avers that, even assuming Plaintiff can establish a *prima facie* case, it has proffered a legitimate, non-discriminatory

reason for its actions in dismissing Plaintiff, to wit, the reorganization of the company. Defendant further posits that its methodology in choosing among available candidates for the positions which remained open was made by others who did not reside in Puerto Rico, did not know the candidates and did not know their ages. Therefore, Defendant claims that discriminatory animus cannot be established.  Regarding the Law 80 claim, Defendant contends that Plaintiff is not entitled to any remedy because the reorganization was just cause for the removal.  Finally, Defendant argues that no back pay claims can be made, insofar as Plaintiff was disabled by the Social Security Administration for reasons unrelated to his discrimination claims.  Since Plaintiff continues to receive disability benefits, due to circumstances that prevent him from being gainfully employed, his clams cannot lie.

Plaintiff counters saying that summary disposition is unwarranted, as issues of fact remain as to why he was not interviewed for any of the other six (6) positions to which he applied at Honeywell, as well as for the Senior System Integration Analyst, which was the only position that Defendant addressed in its motion.  Plaintiff further asserts the legitimate justification offered by Plaintiff was but a pretext to discriminate against him, so dismissal is inappropriate.  Finally, Plaintiff avers there is a factual controversy of fact regarding whether or not his disability was caused by Honeywell, which also precludes summary disposition of the front and back pay claims.  Besides this, Plaintiff raises a number of procedural infirmities in Defendant's dispositive motion that he posits prevent the Court from granting summary disposition of his claims.

Richard Díaz Rodríguez v. Honeywell Aerospace de Puerto Rico, Inc.
Civil No. 13-1481 (CVR)
Opinion and Order
Page 3

For the reasons explained herein below, Defendant's Motion for Summary Judgment is DENIED.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); *see also*, Colón v. Infotech Aerospace Services, Inc., 869 F.Supp.2d 220, 225-226 (D. Puerto Rico 2012).   Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " Hernández, 869 F.Supp.2d at 7 (*quoting* Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).   Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment.   A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c).   If they so wish, they may submit a separate statement of facts which they believe are in controversy.  Facts which are properly supported "shall be deemed admitted   unless   properly   controverted."    Loc.   Rule   56(e);   P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir.  2010) and Colón, 869 F.Supp.2d at 226.  Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

Richard Díaz Rodríguez v. Honeywell Aerospace de Puerto Rico, Inc.
Civil No. 13-1481 (CVR)
Opinion and Order
Page 5

<hr />

## FINDINGS OF FACT

At the outset, the Court must mention that Plaintiff has raised an issue regarding Defendant's answers to Plaintiff's interrogatories, which were signed under penalty of perjury by Honeywell's current Human Resources Senior Manager Christopher Paul Torres ("Torres").  Plaintiff argues that Torres admitted during his deposition that he had no knowledge of and/or involvement whatsoever in the events surrounding Honeywell's 2012 reduction-in-force ("RIF"), which gave rise to this cause of action.  Specifically, Torres admitted he had no knowledge or involvement in any of the crucial aspects of this case: the design or the purpose of the 2012 RIF; the decision-making process by which the position of Senior System Integration Analyst (B3) was selected as the position that would substitute the positions affected by the RIF; the drafting of any documentation regarding how the RIF came to be and how it was going to be implemented;  the criteria that governed the decision to eliminate the positions that were eliminated as part of the 2012 RIF; and how many positions were created or how many were eliminated.  Torres further admitted he did not speak to anyone regarding the information that was required by him to answer the interrogatories, and he never obtained any information from the alleged decision-makers, namely, Laura Boehner, Lucinda Parlato, María Amate and/or Luciano Barragan, regarding how they carried out the RIF and regarding their particular decision to not interview and/or hire Plaintiff Díaz.

Regarding documents related to the design of the RIF, the identification of positions to be eliminated, the process that was going to be carried out, and the way it was going to

<u>Richard Díaz Rodríguez v. Honeywell Aerospace de Puerto Rico, Inc.</u>
Civil No. 13-1481 (CVR)
Opinion and Order
Page 6

be implemented, Torres admitted the majority of these documents were not in Puerto Rico and he did not know their precise location because he did not participate in the creation of any of them.

Compounding this problem is the fact that, as part of the process of answering Plaintiff's Interrogatories, Torres did not conduct an investigation himself, and opted instead to delegate upon Madeline Soto García ("Soto") the task of collecting the information. Soto began working for Honeywell on February 12, 2014 and was obviously not at Honeywell when the 2012 RIF took place. She did not communicate either with Boehner, Parlato, Amate and/or Barragan to obtain information or documents considered by them regarding the 2012 RIF, and none of these people provided Soto or anyone else at Honeywell documents or information they considered in the implementation of the 2012 RIF.

It is clear that neither Soto nor Torres have the personal knowledge required by the rules to answer the interrogatories posed by Plaintiff. Not only were they not present at the time the RIF was held, they failed to request any relevant information from any of the principals involved in that process. The First Circuit has clearly established that: "[b]oth affidavits and deposition testimony are effective in opposing summary judgment only when they are given on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or deponent (as the case may be) is competent to testify about the matter in question." <u>See</u> <u>Hannon v. Beard</u>, 645 F.3d 45, 49 (1st Cir. 2011); <u>Hoffman v.</u>

Applicators Sales And Serv., Inc., 439 F.3d 9, 14 (1st Cir. 2006).   Neither Torres nor Soto possessed nor acquired this personal knowledge, and so admitted under oath.

Defendant attempts to remedy this mishap by stating that the Human Resources employee when the RIF took place is deceased, and further, that answers to the interrogatories signed by Torres were corroborated by Honeywell Vice President Barragan's unsworn statement under penalty of perjury.   Yet, a cursory examination of the answers reveals that many of Torres' answers were, in fact, NOT corroborated by Barragan's statement.

It has been held that, if a declaration fails to comply with these rules, the court may sanction the submitting party by striking it from the record.   Moreno Morales v. ICI Paints, (Puerto Rico), Inc., 383 F.Supp.2d 304, 313-314 (D.P.R.  2005).  However, when a party has at least partially complied with the rules' mandates, striking the entire declaration is considered too harsh of a sanction. Id.; Pérez v. Volvo Car Corp., 247 F.3d 303, 315-16 (1st Cir. 2001).  Instead, the court should approach the affidavit with "a scalpel, not a butcher's knife," disregarding the inadmissible portions and crediting the remaining statements. Pérez v. Volvo Car Corp., 247 F.3d at 315.  In deciding which parts of an affidavit are admissible at the summary judgment stage, "personal knowledge is the touchstone." Id. However, a bare assertion that a statement is based on the affiant's personal knowledge will not suffice; rather, the affidavit must be factually specific and explain the basis for that knowledge. Id. at 316.  As specifically admitted by Torres, he clearly lacks this personal knowledge.

<u>Richard Díaz Rodríguez v. Honeywell Aerospace de Puerto Rico, Inc.</u>
Civil No. 13-1481 (CVR)
Opinion and Order
Page 8

Therefore, in deciding whether or not to accept a fact that was proffered based on Torres' answers, and due to his admission that he knew nothing about the facts applicable to the relevant time period, the Court only accepted as uncontested facts those with information corroborated by information readily kept in the ordinary course of business (i.e. dates of birth, termination dates, or whether a person applied for a particular position) and the facts that were specifically included in Barragan's affidavit. No other facts included and based on Torres' answers were accepted or considered by the Court.

With this in mind, and pursuant to the parties' submissions, the Court deems the following facts uncontested.

1. Plaintiff Richard Díaz Rodríguez was born on March 24, 1955. See: D. Exhibit No. 1, at p. 15, l. 4-5.

2. Díaz obtained a Bachelors Degree in Information Technology from Universidad del Este in June, 2008. See: D. Exhibit No. 1, at p. 17, l. 21-25 and p. 18, l. 1-5.

3. Díaz obtained a Masters Degree in Business Administration from Universidad del Este in June, 2010. See: D. Exhibit No. 1, at p. 21, l. 11-22.

4. Díaz began working for Honeywell on July 21, 2008 as a "Leader Sr. Project IT (IT Dept.)." See: D. Exhibit No. 2.

5. When Díaz began working at Honeywell's facilities in Aguadilla, Puerto Rico, he was supervised by Michelle Laurio, manager of the "Break Fix" team, who was located in Phoenix, Arizona. See: D. Exhibit No. 1, at p. 56, l. 5-19.

<u>Richard Díaz Rodríguez v. Honeywell Aerospace de Puerto Rico, Inc.</u>
Civil No. 13-1481 (CVR)
Opinion and Order
Page 9

6.    Tim Orley substituted Michelle Loren as Díaz's supervisor. See: D. Exhibit No. 1, at p. 61, l. 11-16.

7.    On or about December 2009 and January 2010, Díaz was transferred to the "Build Team." See: D. Exhibit No. 1, at p. 63, l. 18-25; p. 64, l. 14- 18.

8.    Diaz's supervisor, when he was transferred to the "Build Team", was Hugh O'Malley, and later, María Amate.  See: D. Exhibit No. 1, at p. 61, l. 11-16; p. 66, l. 5- 18.

9.    In addition to Díaz, the following employees were part of the "Build Team" during 2012:

   a.    Marta Santana - Date of birth - 7/28/1965

   b.    Elisa Maldonado - Date of birth - 8/5/1976

   c.    Fermín Báez - Date of birth - 1/20/1969

   d.    Nancy Rodríguez - Date of birth - 8/30/1967

   e.    Beatrice Correa - Date of birth - 9/1/1977

   f.    Natanael Hernández - Date of birth - 10/31/1975.

   See: D. Exhibit No. 3, Defendant's Answer to Plaintiff's Request for Interrogatories, at "Answer to Interrogatory No. 12."

10.   During 2012, Honeywell began looking at ways to make its Aerospace IT ("information technology") more efficient to enable the business to meet its growth targets, and, to that end, decided to restructure its Aerospace IT

Organization in the United States and Puerto Rico. See: D. Exhibit No. 13 at ¶ 2.

11.   On June 7, 2012, Honeywell announced significant changes to its Aerospace IT Organization which would impact Diaz's "Build Team." See: D. Exhibit No. 6.

12.   An online "Town Hall Meeting" took place at 11:00 a.m. on June 7, 2012 in which Dave Jarvis, VP for Honeywell Aerospace, informed the employees, including Díaz, of the upcoming reorganization. See: D. Exhibit No. 1, at p. 102, l. 1- 21.

13.   On that same date, Dave Jarvis sent two (2) emails regarding the reorganization of the "Build Team," the creation of the new positions and the subsequent reduction-in-force. See: Exhibit No. 1, at p. 109, l. 1-20 and at p. 110, l. 3-8; D. Exhibit No. 6.

14.   Plaintiff alleges that during the "Town Hall Meeting" Dave Jarvis stated "[i]f you are near a retirement and you are considering it, consider it now."  See: D. Exhibit No. 1, at p. 111, l. 25 and at p. 112, l. 1-12.

15.   At the time, Plaintiff was not considering retirement. See: D. Exhibit No. 1, at p. 112, l. 13-18.

16.   The reorganization of the "Build Team" included the consolidation of some jobs and elimination of some positions, the goal being to synchronize its

technical talent and support for the organization. See: D. Exhibit No. 6 and D. Exhibit No. 13, at ¶ 7.

17. All impacted employees were informed they could apply for the newly created positions. See: D. Exhibit No. 13, at ¶ 9.

18. The online system used at Honeywell for the purpose of posting the positions is known as "TALEO" or "E-Talent". One of the tools of that system is an "ACE Notification Alert." See: P. Exhibit No. 3, p. 19, l. 25; p. 20, l. 1-25; p. 21, l. 1-25; p. 22, l. 1-2.

19. An "ACE Notification Alert" means that a candidate qualifies for a position. See: P. Exhibit No. 3, p. 21, l. 2-24.

20. An "ACE Candidate Alert" means that a candidate met the requirements for a position. See: P. Exhibit No. 3, p. 39, l. 19-24.

21. The person in charge of triggering an ACE Tool, such as an "ACE Notification Alert" or an "ACE Candidate Alert" was the Staffing Specialist in charge of the requisition for the position. See: P. Exhibit No. 3, p. 43, l. 22-25; p. 44, l. 1-25; p. 45, l. 1-25; p. 46, l. 1-25.

22. The pre-screening was used to select the most qualified applicants to proceed to the interview stage. In order to determine the most qualified individuals, Honeywell reviewed the information submitted by the candidates in their applications and resumes and compared it to the required job qualification. See: D. Exhibit No. 13, at ¶ 11-12.

23.  The documents submitted by Díaz for consideration for several positions were his general profile, an online application and his resume.  See: D. Exhibit No. 1, at p. 141, l. 19-25, p. 142, l. 1-14.

24.  The Hiring Managers who performed the reviews of Díaz's resume in the pre-screening process were Luciano Barragan and Laura Bohner, who were located in Honeywell's Arizona and California sites.  See: D. Exhibit No. 1, at p. 139, l. 16-19; D. Exhibit 13 at ¶ 10.

25.  The Hiring Managers based their decision strictly on the information obtained from the resume submitted by the applicant. See: D. Exhibit No. 13, at ¶ 13.

26.  No in-person interviews were conducted with Díaz or any of the candidates during the pre-screening process. See: D. Exhibit No. 13, at ¶ 14.

27.  During this process, Díaz discussed his options with his supervisor at that time, María Amate, who reviewed his resume and provided feedback and recommendations which he incorporated in the document. See: D. Exhibit No. 1, at p. 112, l. 23-25 and at p. 113, l. 1-10.

28.  Plaintiff had online access to available positions at Honeywell. See: D. Exhibit No. 1, Plaintiff's Deposition, at p. 116, l. 6-12.

29.  Díaz' General Profile at Honeywell reflects that he began his post-secondary studies at the University of Puerto Rico, Mayaguez campus in August, 1971 and graduated in December, 1974.  His resume further indicated that his first

job was with Unify Corporation in 1995.  See: P Exhibit No. 6; and D. Exhibit 10, p. 27.

30.  Díaz met the requirements for the positions he applied to, yet he was not interviewed for any of them. See: D. Exhibit No. 7; D. Exhibit No. 8.

31.  There were six (6) new open positions in Honeywell Aerospace that were located in Puerto Rico.  See: D. Exhibit No. 1, Plaintiff's Deposition, at p. 120, l. 2-4.

32.  Ten (10) employees applied for the System Integration Senior Analyst position and six (6) were selected.  See: D. Exhibit 13 at ¶ 15.

33.  Besides the System Integration Senior Analyst position, Plaintiff applied for the following positions:

a.    IT Build Lead Systems Integration Analyst - # 00197306;

b.    Development Lead - SWR & Waterline - #00196123;

c.    Development Lead - Deployment & Waterline - #00196135;

d.    IT Build Senior Systems Integration Analyst - 00197250;

e.    IT Performance Indicators Lead - #00198399;

f.    IT Build Senior Systems Integration Analyst - #00199254

See: P. Exhibit 6.

34.  Díaz' General Profile does not state why Honeywell did not interview and/or hire Díaz for the position of System Integration Senior Analyst - #00197268. See:  P. Exhibit No. 6, Honeywell's Bates Number #916-917.

35. Honeywell rejected Díaz' application for the position of IT Build Lead Systems Integration Analyst - 00197306 in the "interviews" step.  See: P. Exhibit No. 6,, Second row of Honeywell's Bates Number #913.

36. An ACE Alert Notification as to Díaz was triggered for the position of Development Lead - SWR & Waterline - #00196123. See: P. Exhibit No. 6, Honeywell's Bates Number #915, eleventh row, third column.

37. Honeywell rejected Díaz' application for the position of Development Lead - SWR & Waterline - #00196123 in the "interviews" step. See: P. Exhibit No. 6, Honeywell's Bates Number #915, Seventh row, second and third columns.

38. An ACE Alert Notification and ACE Candidate Alert were triggered as to Díaz for the position of Development Lead - Deployment & Waterline - #00196135. See: P. Exhibit No. 6, Honeywell's Bates Number #917-918, Sixth row of Honeywell's Bates Number #918, third column.

39. Honeywell rejected Díaz' application for the position of Development Lead - Deployment & Waterline - #00196135 position in the "interviews" step. See: P. Exhibit No. 6, Honeywell's Bates Number #917-918, First row of Honeywell's Bates Number 918.

40. Honeywell rejected Díaz' application for the position of IT Build Senior Systems Integration Analyst - 00197250 in the "interviews" step. See: Exhibit No. 6, Honeywell's Bates Number #919, Eighth row.

41.     An ACE Alert Notification and ACE Candidate Alert were triggered as to Díaz for the position of IT Performance Indicators Lead - #00198399. See: P. Exhibit No. 6, Honeywell's Bates Number #920-921, Eighth row of Honeywell's Bates Number 921, third column.

42.     Honeywell rejected Díaz' application for the position of IT Performance Indicators Lead - #00198399 in the "interviews" step. See, P: Exhibit No. 6, Honeywell's Bates Number #921, second row.

43.     Although Díaz did not apply for the position of IT Build Senior Systems Integration Analyst - #00199254, the Honeywell system "matched" Díaz to this requisition. However, Díaz was not notified by Honeywell that he had been matched to this requisition. See: P. Exhibit No. 6, Honeywell's Bates Number #922-923, Eight row of Honeywell's Bates Number #923, third column.

44.     An ACE Alert Notification and ACE Candidate Alert were triggered as to Díaz for the position of IT Build Senior Systems Integration Analyst - #00199254. See:  P. Exhibit No.  6, Honeywell's Bates Number #922, Tenth row, third column.

45.     Honeywell rejected Díaz' application for the position of IT Build Senior Systems Integration Analyst - #00199254. See: P. Exhibit No. 6, Honeywell's Bates Number #922, ninth row.

46. The following individuals were hired for the six (6) positions available after the pre-screening process and interview: Beatrice Correa Ruiz, Jesús Martínez, Fernando Lizardi, Fermín Báez, Natanael Hernández and Nancy Rodríguez. See: D. Exhibit 13 at ¶23.

47. The July 2012 RIF impacted thirty (30) positions throughout the United States and Puerto Rico. See: D. Exhibit No. 3, No. 2; D. Exhibit No. 12, BS 509.

48. Díaz was one of the employees impacted by the RIF and his employment was terminated on July 18, 2012. See: D. Exhibit No. 3, No. 2.

49. The "Build Team" was impacted by the reorganization since positions within the team were eliminated. See: D. Exhibit 13 at ¶ 8.

50. The other two (2) employees in Puerto Rico impacted by the July 2012 RIF where Marta Santana, who was 46 years old and José Vera, who was 29 years old. See: D. Exhibit No. 3.

51. Marta Santana did not apply for the position of "Senior System Integration Analyst - B3." See: D. Exhibit No. 3, No. 2."

52. José Vera applied for the position of "Senior System Integration Analyst - B3" and qualified in the pre-screening process but was not selected during the interview process; thus, Vera was also laid-off. See: D. Exhibit No. 3, No. 2.

53. Employee Fermín Báez ("Báez") was 43 years old at the time of the 2012 RIF. See: Docket No. 42-1, p. 12, first column, sixth row.

54.    The first employment listed in Báez' resume began in the year 2000. See: D. Exhibit 10, p. 5, third row.

55.    Báez' General Profile reflects that his address is in Kissimmee, FL, that his place of residence is Orlando, FL and his phone number has a 407 area code. See: P. Exhibit No. 7, Honeywell's Bates Number #924.

56.    Báez' resume reflects that, on the date in which he prepared the resume, he was residing in Kissimmee, FL with area code 407, but that his employment was in Honeywell Aerospace in Aguadilla, PR. See: D. Exhibit No. 10-13, top of all pages, and p.12.

57.    Díaz' termination was informed to him during a meeting held at Honeywell's Human Resources Offices in Aguadilla by Loida Bosques and Héctor Rosado. See:  P. Exhibit No. 4, p. 149, l. 8-25; p. 150, l. 1-8.

58.    Díaz asked Bosques and Rosado to tell him the reasons why he was not interviewed, the criteria used and who were the people who were being affected; Bosques and Rosado responded that it was "irrelevant" and did not provide Díaz with the information.  See: P. Exhibit No. 4, p. 150, l. 8-23.

59.    On the date of Díaz' termination, July 18, 2012, he was given a letter informing him that he was being laid off because of the reorganization and that his position was being eliminated. See: D. Exhibit No. 1, p. 151, l. 19-25; see also: D. Exhibit No. 4.

60. There are no documents indicating that Díaz was ever reprimanded for any failure and/or deficiency in the performance of his job. See: P. Exhibit No. 5, p. 3, No. 9.

61. On or about March 7, 2013, Díaz requested Social Security disability benefits. See: D. Exhibit No. 1, at p. 158, l. 7-12.

62. Díaz receives Social Security disability benefits since June 11, 2013, retroactive to January 2013. See: D. Exhibit No. 1 at p. 28, l. 21-25 and p. 29, l. 1-16; see also: D. Exhibit No. 11.

63. Díaz currently receives $2,450.00 per month in Social Security disability benefits. See: D. Exhibit No. 1, at p. 28, l. 7-10; see also: D. Exhibit No. 11.

64. For Social Security disability benefits, Plaintiff is completely disabled to work. See: Exhibit No. 1 at p. 29, l. 14-20.

## LEGAL ANALYSIS

Before turning to the legal analysis of the issues in this case, the Court addresses the fact that Plaintiff Díaz applied for more than one position at Honeywell. Indeed, one of his grievances, and the complaint specifically so states, is that he applied for several positions and was interviewed for none. Despite this rather clear statement of its case by Plaintiff, Defendant opted to base the discussion in its Motion for Summary Judgment on the facts surrounding only one position, to wit, that of Senior System Integration Analyst. Therefore, for that reason alone, the request for summary judgment should be denied, as Defendant has neglected to present any argument whatsoever regarding the other positions. It has

long been the position of this Court that arguments raised in a perfunctory manner or not developed, are deemed waived.  United States v. Zannino, 895 F.2d 1,17 (1st Cir. 1990).

Furthermore, as will be discussed more thoroughly below, Plaintiff has raised a genuine issue of material fact as to why he was not selected or interviewed when the ACE system notified him that the qualified for at least one of those other positions.  In light of this, it will be up to a jury to determine whether Defendant's explanations for its actions, in refusing Diaz' applications, are satisfactory.

## A.   ADEA

The ADEA makes it "unlawful for an employer … to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The ADEA requires proof that age was the determinative factor, as opposed to a motivating factor, of an employer's decision to terminate an employee. See Loeb v. Textron, 600 F.2d 1003, 1011 (1st Cir.1979).

When there is no direct evidence of age discrimination, as is usually the case, the Court employs the McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817 (1973) burden-shifting framework to evaluate the employee's evidence.  See Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir.2012). Under the framework, the employee shoulders the initial burden by demonstrating that: (1) the employee was at least 40 years old at the time of the firing; (2) the employee was qualified for the position that he or she had held; (3) the employee suffered an adverse employment action; and (4) the employer subsequently demonstrated

a continuing need for those services.  See  Bonefont-Igaravidez v. Int'l. Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011) (citing Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009).

If the employee succeeds in establishing a prima facie case, then a rebuttable presumption of age discrimination is activated.  The burden of production is placed on the defendant's shoulders to articulate a legitimate, non-discriminatory justification for the adverse employment action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 254. 450 U.S. 248, 101 S.Ct. 1089 (1981).

If the employer successfully carries this burden of production, the presumption of discrimination disappears. Dávila v. Corporación de Puerto Rico, 498 F.3d 9, 16 (1st Cir. 2007) (citing Ramírez Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 78 (1st Cir. 2005)).   Once the employer articulates its legitimate reason for its decision, the plaintiff, 'before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the fact-finder reasonably to conclude that the employer's decision ... was wrongfully based on age' and that "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Marrero v. Shinseki, Slip Copy, 2015 WL 224652 (D.P.R.,2015) and Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 120 S.Ct. 2097 (2000).

For purposes of this motion only, Defendant has conceded that Plaintiff has established a prima facie case of age discrimination, and has instead devoted its argument to its legitimate, non discriminatory reason, namely, a RIF.  Indeed, the Court agrees that

a reorganization is a legitimate and bona fide reason for termination.  Lewis v. City of Boston, 321 F.3d 207 (1st Cir. 2002).

At this stage, for Plaintiff to simply "impugn the veracity" of the employer's proffered reason is insufficient; instead, he must proffer specific facts that would enable a reasonable fact finder to conclude that the employer's reason for their actions was a "sham" intended to cover up the employer's true motive.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991).

Plaintiff Díaz counters with several arguments that demonstrate that issues of fact surround Defendant's proffered non-discriminatory reason, thus precluding the entry of summary judgment on Plaintiff's claims.

### 1.    Knowledge of Plaintiff's Age.

Defendant avers that, as part of its non-discriminatory process, the persons who evaluated the candidates did not know their ages and further,  that no personal interviews were held.  In support thereof, Honeywell submits the unsworn statement of Barragan, Vice President of IT for Honeywell.  Barragan was part of the team assigned to evaluate and hire employees for the positions that remained after the 2012 RIF.

As part of the candidates application materials, however, each candidate also had to supply his/her resume, which indicated the dates of his/her education and employment. Making all inferences in the non-moving party's favor, as the Court must at this stage, it would be very easy to determine a candidate's approximate age pursuant to the dates he attended college and his or her subsequent work.  Thus, Barragan and his staff could have

easily judged each candidate pursuant to age.  It will be up to Defendant to prove to the jury that age was not considered in the recruitment process when it could have been so easily ascertained from the candidate's resume, and the jurors will give it the probative value they deem fit.

### 2.    The Positions.

Plaintiff avers that he submitted applications for several positions for which he qualified for and was never interviewed.  As previously stated, Defendant failed to meaningfully address any of the other positions that Plaintiff applied for and was denied an interview, and therefore summary judgment as to those positions is automatically denied.

Regarding the one position which Defendant did address, the Senior Systems Integration Analyst, for starters, there is an obvious issue of fact in the numerical values given to Plaintiff by Honeywell in the evaluation process that can only be resolved by a jury.

In the numerical ratings given to Plaintiff for the classification of "prior SAP experience", one document produced by Defendant gave him a one (1) and another gave him a nine (9).  Defendant counters that it was not a nine (9), that it was a three (3) because the document was "blurry."  Yet, this already contradictory information is further contradicted by Barragan's statement, who submitted a document attached to his statement indicating that he had given Plaintiff a one (1) for the SAP experience category.  And, in spite of the fact that it is this numerical assignation what determines who (in the total sum awarded) is interviewed and who is not, Defendant failed to explain why it produced two

Richard Díaz Rodríguez v. Honeywell Aerospace de Puerto Rico, Inc.
Civil No. 13-1481 (CVR)
Opinion and Order
Page 23

(2) documents that award Plaintiff differing marks for the same category, when the higher marking would have pushed Plaintiff into the interview zone. As such, it will be up to a jury to evaluate this conflicting information.

Plaintiff also casts doubt on the veracity of Defendant's unsubstantiated assertion that Díaz was not considered for any other position except Puerto Rico because he resided in Puerto Rico. Honeywell has alleged in its Reply that "preference was given to candidates working at the location in which the job positions were posted." (Docket No. 70, p. 4). Yet, Honeywell fails to offer any evidentiary support for this proposition. Furthermore, Plaintiff has presented evidence showing that Báez, a Florida resident, was hired for one of the positions which Honeywell alleges was "in Puerto Rico." Moreover, a cursory review of Báez' resume indicates he resided in Kissimmee, Florida, and his telephone had a 407 area code, yet it also states he "worked" in Honeywell Aguadilla.

If it is true that preference was given to candidates who were physically in the location, Defendant has failed to explain the key issue of why Báez, a Florida resident, was hired for a position over Plaintiff, who was a Puerto Rico resident. This would seem to be in line with Plaintiff's assertion that Honeywell employees work in a "virtualized environment" (meaning the employee does not have to be physically in the location he or she worked in) and therefore the fact that he was in Puerto Rico would make no difference for consideration of positions located elsewhere. Therefore, Honeywell must also then explain why it failed to interview and/or select Plaintiff for positions which he applied to,

but which were allegedly not located in Puerto Rico.  These are clearly factual issues for the jury to analyze and resolve, and not properly resolved at the summary judgment stage.

### 3.   Plaintiff's Disability.

The Court gives short shrift to Defendant's last argument, that Plaintiff's disability is not linked to his work, and since he is 100% disabled and receiving Social Security benefits, he cannot recover under ADEA.  Plaintiff has presented evidence from his treating physician, Dr. Jorge de Jesús, who testified that Plaintiff had "severe symptoms of depression" ... "after lost of his job." (Docket No. 74, Exh 1, P. 66).  Dr. de Jesús also stated that Plaintiff's problems were "work related." (Id. p. 70). Therefore, Plaintiff argues, dismissal is inappropriate at this stage.

Defendant counters, saying that the "testimony is contradictory to Dr. de Jesús' previous representations", specifically, to the report he submitted to the Social Security Administration that did not indicate Plaintiff's condition was work related. (Docket No. 70-2, at 47).  Defendant forgets that it is not the province of the Court, rather of the jury, to evaluate conflicting statements and give them their appropriate probative value.  This is precisely the kind of issue that falls squarely within the jury's province.  At this stage, this contradictory testimony is sufficient for Plaintiff to create a triable issue of fact as to whether or not Plaintiff's depression and subsequent disability was work related.  It will be up to the jury to evaluate Dr. de Jesús' testimony and report, and resolve this issue one way or the other.

The aforementioned discussion evidences that Plaintiff has pointed to genuine issues of fact which cast doubt over Defendant's proffered legitimate, non discriminatory reasons. As such, Defendant's motion for summary disposition of the ADEA claims is DENIED.

**B.    Spoliation.**

Plaintiff also argues he is entitled to a spoliation inference because Defendant failed to provide him with certain documents.  Spoliation is "[. . . the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Zubulake v. UBS Warburg, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  For the reasons explained below, the Court finds that the parties have not put the Court in a position to rule on this claim at this stage of the proceedings, and further finds these argument better suited for a motion *in limine*.  The Court therefore DENIES WITHOUT PREJUDICE this claim at this time.

The process of applying for new positions during the 2012 RIF consisted of filling out the application online, known as the General Profile, attaching the candidate's resume and submitting two (2) documents, to wit, the application and the resume.  During the course of the litigation, because Honeywell alleged the only documents considered by the Hiring Managers during the 2012 RIF were each candidate's resume and "application" for the positions, Plaintiff made a request for production of said documents.  After objecting to the discovery requests on grounds of being burdensome and oppressive, Defendant, produced only the General Profiles of each candidate.

After Plaintiff raised the spoilation issue in its opposition to Defendant's motion for summary judgment and, contrary to Defendant's contention, long after the documents had been requested by Plaintiff and not been produced, Defendant now argues that Plaintiff "misunderstood" the documents and finally produced them on April 20, 2015.   The documents were produced seven (7) months after the discovery stage had ended and obviously, after Plaintiff had already filed his opposition to Honeywell's motion for summary judgment.

The best-known civil remedy that has been developed is the so-called spoliation inference that comes into play when a litigant is made aware of the destruction or concealment of evidence during the underlying litigation.   Since the Seventeenth Century, courts have followed the rule that all things are presumed against the destroyer.   See Hirsch v. General Motors Corp., 628 A. 2d 1108 (Law Div. 1993); Schmid v Milwaukee Elec. Tool Corp., 13 F. 3d 76, 78 (3rd Cir. 1994). This inference allows the jury to presume that the evidence that has been falsified or destroyed by a party would have been unfavorable to him or her.

The duty to preserve material evidence pertinent to a case arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.   Vélez v. Marriott PR Management, Inc., 590 F.Supp.2d 235, 258 (D.P.R. 2008).   Furthermore, in addition to the obligation to preserve evidence, the person must have acted with a culpable state of mind.   Klezmer ex rel. Desyatnik v. Buynak, 227 F.R.D. 43 (E.D.N.Y. 2005).

Richard Díaz Rodríguez v. Honeywell Aerospace de Puerto Rico, Inc.
Civil No. 13-1481 (CVR)
Opinion and Order
Page 27

The requirement of a culpable state of mind is met by showing the evidence was destroyed either knowingly or negligently. Residential Funding v. DeGeorge Financial Corp., 306 F.3d 99, 108 (2nd Cir. 2002). When evidence is destroyed in bad faith, that alone is enough to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanction. Residential Funding, 306 F.3d at 109 (2nd Cir. 2002). This analysis is squarely applicable in this district, where case law has established that it is necessary to use the more lenient negligence standard, which requires proof of relevance of the missing document, unless willful destruction of the evidence can be established. Vázquez-Corales v. Sea-Land Service, Inc., 172 F.R.D. 10 (D.P.R. 1997).

The facts of this case show that in three (3) separate occasions, Plaintiff specifically asked for the missing applications. Now, months after the discovery deadline of September 30, 2014 has passed, Defendant counters with the "misunderstood " argument, and that they were recently "able to locate" the documents. Their defense is that no harm was done because the documents have been produced and not actually destroyed, and in any event, they are "practically identical" to the General Profiles already provided.

This is a woefully inadequate explanation for Honeywell's complete failure to produce these documents during discovery and borders on Rule 11 sanctionable behavior. The documents were produced only when Defendant found itself with the sword literally pointed at its neck. This cloak and dagger discovery behavior is frowned upon by this

Court, and the Court was surprised to find out it was attributable to the distinguished counsel representing Defendant in this case.

At this time, it is clear that Plaintiff was deprived of the documents, and their potential use in this case during the discovery phase.  It is also clear that the documents were not destroyed.  However, the Court finds that Plaintiff has not adduced how relevant the newly located documents are to his case, and therefore has failed to meet a threshold requirement for the inference.  Thus, the Court may entertain this matter once again closer to the trial, where both parties may more fully develop their arguments via motions *in limine* where Plaintiff can evidence the relevance of the documents to his case and any prejudicial effect Defendant's withholding caused him.

In view of the foregoing, the request for a spoliation inference is DENIED WITHOUT PREJUDICE at this time.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment (Docket No. 42) is DENIED on all grounds therein raised.  In addition, Plaintiff's request for a spoliation inference is DENIED WITHOUT PREJUDICE of being again raised before trial.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 16th day of June, 2015.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE